**Albert SCOLNICK, Celia Scolnick, Plaintiffs,**

v.

**Justin WINSTON, Michael J. Murphy, Department of Hospitals, Martin M. Josephson, M.D., Louis J. Lefkowitz, Isadore Siegel and the City of New York, Defendants.**

United States District Court
S. D. New York.
July 16, 1963.

Albert Scolnick and Celia Scolnick, pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, for defendants; Herbert J. Wallenstein, Asst. Atty. Gen. of New York, of counsel.

## METZNER, District Judge.

This is an action by plaintiffs, husband and wife, acting pro se, to recover damages for an alleged conspiracy to deprive them of their civil rights.

It is alleged that jurisdiction exists in this court by virtue of the Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States, 28 U.S.C. § 1343 and 42 U.S.C. § 1985. Defendants City of New York and Michael J. Murphy, Police Commissioner of the City of New York, move to dismiss pursuant to Fed.R.Civ.P. 12(b) (6), for failure to state a claim upon which relief can be granted. Defendants Louis J. Lefkowitz, Attorney General of the State of New York, and Isadore Siegel, an Assistant Attorney General of the State of New York, also move for a dismissal pursuant to rule 12(b) (6), and in addition, pursuant to rule 12(b) (2), on the ground that the court lacks jurisdiction of the persons of these two defendants.

The complaint is a long and complex document containing 107 allegations. It begins with a recital of a real estate transaction in which the plaintiffs were represented by defendant Justin Winston as their attorney. Because of disputes that arose between the plaintiffs and Winston, the plaintiffs allege that they notified defendant Lefkowitz concerning the harassments imposed upon them by Winston, certain Staten Island realtors and key residents of that borough for approximately a year and a half.

There then follow eleven paragraphs relating an incident that took place on March 8th, 1962 in a restaurant, where plaintiffs claim that they "were subjected to menacing looks and highly threatening remarks directed at them by an organized group of undesirable looking persons, who milled about plaintiffs within hairbreadth proximity." After being escorted home by two policemen, plaintiffs claimed they received a menacing telephone call.

At this point the complaint recites the voluntary commitment by plaintiff Celia Scolnick to Bellevue Hospital and Manhattan State Hospital in 1958, which she states was induced "by the prolonged use of depressant drugs fed to her by 'Tom', a counterman employed in a luncheonette which plaintiff C. S. frequented several times daily." On March 9th, 1962 they had a policeman escort them to the office of the defendant Lefkowitz, where they were interviewed by the defendant Siegel. Siegel, at first, told them to go home with a police escort, but when they "said they would go home if put under protection at their home or in jail, if necessary, until such time as an investigation was commenced", Siegel is alleged to have told them that they were suffering from hallucinations and would have to go to Bellevue Hospital. Siegel obtained from Celia Scolnick the name of the doctor who originally treated her at Bellevue in 1958, who is the defendant Josephson. After a telephone call to Josephson, Siegel arranged for the plaintiffs to be taken to Bellevue. They were first taken to a police station and from there they were taken by ambulance to the hospital. They claim that at Bellevue they did not receive a "psychiatric entrance examination", were not told the reasons for their commitment, and they never appeared before any court to determine their mental status.

Plaintiffs then allege that for seven months after release from the hospital in April 1962 they lived "submerged by the bold use of politicians, planted 'customers', ex Bellevue 'patients' and undeniable members of the underworld, many of whom were planted repetitively and strategically", all of whom "participated in an incessant pattern of pernicious methods and surreptitious behavior * * * to discourage and exhaust the physical and mental powers of the plaintiffs so as to stop their near

fanatic obsession to expose their illegal commitment to Bellevue."

It is alleged that all of the defendants conspired without good cause to commit the plaintiffs to a mental institution without due process of law and to intimidate them so that they would be helpless in their investigation of an illegal real estate operation and to prevent the disclosure of a "fixed" tribunal.

It is claimed that the police violated the Fourth Amendment of the Constitution in seizing the plaintiffs, that they violated the Sixth Amendment by failing to inform the plaintiffs of the accusations against them, in failing to confront them with witnesses, and in failing to offer them the aid of counsel. It is further alleged that the police violated the Fourteenth Amendment by not investigating the threats against plaintiffs' lives and in conspiring to commit them to a mental hospital. The police are also alleged to have violated 42 U.S.C. § 1985 and article 1, sections 11 and 12, of the New York State Constitution.

Defendant Lefkowitz is alleged to have failed to properly investigate the threats made against plaintiffs' lives and the alleged illegal real estate operation. He is also charged with having conspired with Siegel and others to illegally incarcerate plaintiffs in a mental institution. The actions of Lefkowitz and Siegel are claimed to have violated the Fourth, Sixth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1985. It is alleged that the claims against Lefkowitz and Siegel are against them personally and not against the State of New York.

Recovery of $10,000,000 is sought against the City of New York and $3,000,000 each from defendants Lefkowitz and Siegel.

[1] There is no claim for relief against the defendant Murphy and in the amendment to the complaint it is stated that all references to the actions of the police officers are complaints against Murphy, for which the defendant City of New York is to be held responsible in damages. Since there is no allega-

tion that Murphy violated any rights of plaintiffs and since no relief is sought against him, the complaint against him must be dismissed.

The City of New York contends that the suit must be dismissed since there is no allegation of compliance with sections 50-e and 50-h of the General Municipal Law of New York, McKinney's Consol. Laws, c. 24, relating to filing of claims and examination thereof by the city as conditions precedent to suits against the city.

The first ten amendments to the Constitution were adopted to secure the rights of the people against invasion by the federal government, and consequently alleged violations of the Fourth and Sixth Amendments cannot be the basis for relief against the City of New York. See Bell v. Hood, 71 F.Supp. 813, 816 (S.D.Cal.1947), and cases cited. Nor can an alleged violation by the city of the Fourteenth Amendment be the basis for relief. Fisher v. City of New York, 312 F.2d 890 (2d Cir. 1963), cert. denied, 374 U.S. 828, 83 S.Ct. 1866, 10 L.Ed.2d 1051.

Assuming that an action may be maintained against the city for damages for alleged violations of the Constitution of the State of New York, such relief could only be obtained in the state court, since there is an absence of diversity of citizenship between plaintiffs and the city.

There remains the alleged violation by the city of section 1985 of Title 42, U.S.C. This section is part of the Civil Rights Act, and while it is clear that compliance with state administrative procedures is not a prequisite to such a suit (McNeese v. Board of Educ., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622), it is also well settled that a municipal corporation such as the City of New York may not be sued under that Act. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961); Fisher v. City of New York, supra; Spampinato v. City

of New York, 311 F.2d 439 (2d Cir. 1962). Thus the claim against the City of New York must be dismissed.

■■ We come now to the defendants Lefkowitz and Siegel, who are sued as individuals. They have moved for dismissal pursuant to rule 12(b) (2) on the ground that the court lacks jurisdiction over their persons. They assert that their actions, as alleged in the complaint, were taken as officers of the state, and therefore the suit is actually one against the State of New York, which has not consented to be sued here. The mere fact that a defendant in a civil rights case may have acted within the scope of his authority does not necessarily relieve him of liability. If defendants' contention were upheld, no suit under this statute could be prosecuted in the federal courts, since such suits are inherently against persons acting under color of state law. Bush v. Orleans Parish School Bd., 138 F.Supp. 337, 340 (E.D.La.1956), aff'd, 242 F.2d 156 (5th Cir. 1957); see Georgia R. R. & Banking Co. v. Redwine, 342 U.S. 299, 303–306, 72 S.Ct. 321, 96 L.Ed. 335 (1952). This action is brought under the Civil Rights Act against the defendants individually who are residents of New York and were served with process in this jurisdiction. There is jurisdiction of the action and of the defendants, although it may be that the complaint fails to state a claim upon which relief may be granted. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The motion to dismiss pursuant to rule 12(b) (2) is accordingly denied.

■ There remains the motion by the defendants Lefkowitz and Siegel for a dismissal pursuant to rule 12(b) (6). No action lies against these defendants under either the Fourth or the Sixth Amendments to the Constitution of the United States for the same reason that no action predicated on these amendments lies against the City of New York, and for the additional reason that the

prohibitions of these amendments do not apply to individual conduct. Bell v. Hood, 71 F.Supp. 813, supra. No action will lie against them individually predicated on the Fourteenth Amendment, since the provisions of that amendment are directed to actions by a state as the law now stands.[1] The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883); see Fisher v. City of New York, supra. Insofar as the claims are predicated upon violations of the New York State Constitution, there is lack of diversity jurisdiction.

We come now to that portion of the complaint which seeks relief for violation of the Civil Rights Act because of the alleged failure of the defendants Lefkowitz and Siegel to investigate plaintiffs' charges of threats to their lives and improprieties with regard to the real estate on Staten Island. Plaintiffs rely on 42 U.S.C. § 1985(3), the pertinent part of which reads as follows:

"If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws * * * the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

■ The defendants contend that they are immune from suit because they are quasi-judicial officers of the state. There is a traditional immunity of judges and quasi-judicial officers such as prosecutors for actions taken within the scope of their authority. Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950); Yaselli v. Goff, 12 F.2d 396 (2d Cir. 1926), aff'd per curiam, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927).

---

1. The court is aware of the current debates in the Congress as to whether the proposed civil rights legislation may be based on the Fourteenth Amendment in view of the language therein that "No state shall * * *."

In Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the Supreme Court held that the Civil Rights Act did not abrogate the traditional immunity of legislators for actions taken and declarations made as such. The majority of courts hold that the Civil Rights Act did not abrogate the similar immunity of judges and quasi-judicial officers such as prosecuting attorneys. Phillips v. Nash, 311 F.2d 513, 516 (7th Cir. 1962); Kostal v. Stoner, 292 F.2d 492 (10th Cir. 1961); Kenney v. Fox, 232 F.2d 288 (6th Cir. 1956); Morgan v. Sylvester, 220 F.2d 758 (2d Cir. 1955), affirming per curiam 125 F.Supp. 380 (S.D.N.Y.1954); Tate v. Arnold, 223 F. 2d 782 (8th Cir. 1955): Francis v. Crafts, 203 F.2d 809 (1st Cir. 1953). Contra, Picking v. Pennsylvania R. R. Co., 151 F.2d 240, 250–251 (3d Cir. 1945). See Note, The Proper Scope of the Civil Rights Act, 66 Harv.L.Rev. 1285, 1296–97 (1953).

Defendants Lefkowitz and Siegel plainly acted within the scope of their authorities as Attorney General and Assistant Attorney General of New York when they determined not to pursue plaintiffs' charges.

Furthermore, section 1985 speaks of a conspiracy to deprive any person of the equal protection of the laws. The alleged failure to make the requested investigation is not such a deprivation. As was said in Jennings v. Nester, 217 F.2d 153, 154 (7th Cir. 1954), cert. denied, 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281 (1955):

"Although it [the complaint] alleges improper acts on the part of the defendants, there is nothing to indicate that every citizen of Illinois is not potentially subject to the same treatment."

See Mitchell v. Greenough, 100 F.2d 184, 187 (9th Cir. 1938), cert. denied, 306 U.S. 659, 59 S.Ct. 788, 83 L.Ed. 1056 (1939). Therefore, this portion of the complaint does not state a claim upon which relief can be granted.

Finally, there is the claim that Lefkowitz and Siegel conspired in violation of section 1985(3) to illegally incarcerate the plaintiffs in a mental hospital with knowledge that they would be terrorized by the underworld and for the purpose of inhibiting the investigation of the alleged professional misconduct of defendant Winston.

It is not part of the official duties of either of these defendants to arrange for the observation of persons in a hospital for the mentally ill. Thus while the alleged action by Siegel may have been taken under color of state law (see Monroe v. Pape, supra), it was outside the scope of his authority and therefore immunity does not attach. Lewis v. Brautigam, 227 F.2d 124, 55 A.L.R.2d 505 (5th Cir. 1955); cf. Yates v. Village of Hoffman Estates, 209 F. Supp. 757 (N.D.Ill.1962); Gregoire v. Biddle, supra, 177 F.2d at 581 (dictum).

Clearly, relief against these defendants could not be granted on the claimed violation of section 1985(3) because there is no allegation of purposeful discrimination which is required in a suit based on that section. Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L. Ed. 497 (1944). The placing of the plaintiffs in Bellevue Hospital under the circumstances alleged in this complaint would be a deprivation of due process of law, rather than a deprivation of equal protection of the laws. The right to recover damages for deprivation of due process of law is provided by section 1983. Mitchell v. Greenough, supra. Despite the fact that plaintiffs have cited section 1985(3) as the basis for relief, the complaint may be sustained under section 1983. Brazier v. Cherry, 293 F.2d 401, 403 (5th Cir.), cert. denied, 368 U.S. 921, 83 S.Ct. 243, 7 L.Ed.2d 136 (1961); Lewis v. Brautigam, supra.

However, section 1983 makes no mention of a right to recover for a conspiracy as section 1985(3) does. This difference between the sections has been the subject

of several opinions as to whether an action lies under section 1983 for conspiracy. Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962); Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959); Lewis v. Brautigam, supra; Watkins v. Oaklawn Jockey Club, 86 F.Supp. 1006, 1016–1017 (W.D.Ark.1949), aff'd 183 F.2d 440 (8th Cir. 1950), hold that such an action does lie. Egan v. City of Aurora, 291 F.2d 707 (7th Cir. 1961); Jennings v. Nester, supra, hold to the contrary.

I am persuaded that such an action does lie because the language of section 1983 is to the effect that liability attaches to one who "subjects, or causes to be subjected" anyone to the deprivation of his rights, privileges or immunities under the Constitution. Clearly, the allegations of the complaint are sufficient to withstand a motion to dismiss insofar as they allege a conspiracy by Lefkowitz and Siegel to illegally incarcerate plaintiffs in Bellevue Hospital.

Motion disposed of in accordance with the above opinion. So ordered.