**Henry PERZANOWSKI**

v.

**Laurino J. SALVIO et al.**

**Civ. No. 15536.**

United States District Court,
D. Connecticut.

Jan. 4, 1974.

Bruce C. Mayor (Schweitzer & Mayor), Hartford, Conn., for plaintiff.

John B. Nolan (Day, Berry & Howard), Hartford, Conn., for defendants.

## RULING ON MOTIONS
## TO DISMISS

CLARIE, District Judge.

The plaintiff, Henry Perzanowski, brought this action pursuant to 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. §§ 1331, 1343, seeking monetary damages from the City of New Britain; its Building Official Laurino J. Salvio; and five members of its Building Commission, each of whom is sued in his individual capacity. The essence of the four count complaint is that the defendants have violated the plaintiff's rights under the fourteenth amendment to the United States Constitution by declaring a building owned by the plaintiff to be unsafe, and demolishing the same without affording due process or providing compensation. The defendants have moved to dismiss for lack of jurisdiction under 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1343 and 1331, and for failure to state a claim upon which relief can be granted. The individual defendants' motions are denied; the municipal defendant's motion pursuant to Rule 12(b)(6), Fed.R.Civ.P., is granted.

Prior to June of 1972, the plaintiff was the owner of a three story, wooden frame building on Grove Street in New Britain, Connecticut. On or about May 20, 1970, a fire severely damaged that building; and on July 29, 1971, a registered letter was sent by the defendant Salvio to the plaintiff, informing him that the building had been found to be hazardous and ordering that it be demolished. The plaintiff was simultaneously advised of his "appeal rights." According to an affidavit filed by the defendant Salvio, the plaintiff refused to accept delivery of that letter, and a copy was therefore posted on the premises on August 23, 1971. A second notice was mailed to the plaintiff on October 15, 1971, again informing him of his "rights under the State Building Code" and notifying him that the building would be demolished if he failed to respond. Copies of these letters, however, have not been made available to the Court.

The defendant Salvio's affidavit further represents that the plaintiff attended a meeting of the New Britain Building Commission in early March of 1972, and requested an extension of time within which to repair his building. The Commission granted the plaintiff an extension, conditioned upon the posting of a bond to assure timely completion of the repairs. A few days later, however, the plaintiff expressed unwillingness to post such a bond. Accordingly, on March 13, 1972, the defendant Salvio requested that the City of New Britain appropriate funds for the demolition of the plaintiff's building. This appropriation was approved by the City's Common Council on March 15, 1972.

On March 21, 1972, the plaintiff petitioned the defendant Building Commission to have his case reviewed by a Board of Survey. The Commission granted the petitioner's request, and the defendant Salvio provided him with a copy of the State Building Code sections pertaining to Boards of Survey. The plaintiff then selected an engineer to represent his interests on the three

member Board. However, the defendant Salvio's affidavit represents that the plaintiff then "refused to cooperate in choosing the neutral third member of the Board as required by the State Building Code." The plaintiff, on the other hand, maintains that through no fault of his own "the Board was never properly convened." In any event, no Board of Survey was convened and, in early May of 1972, the defendant Commission voted to "implement" its demolition order. Notice of the Commission's decision was conveyed to the petitioner's attorney on May 10, 1972, and the plaintiff discussed the Commission's decision with Salvio in a letter dated May 22, 1972. Demolition of the plaintiff's building commenced on June 14, 1972, and was completed within a week. Shortly thereafter, the plaintiff notified the defendant municipality of his intent to sue.

The defendants submit that the State Building Code, Conn. State Regs. § 19–395–100.0 et seq., "provides for speedy and effective administrative review of the actions of local building officials." According to the defendants, two avenues of administrative procedure are available to a person who considers himself aggrieved by a decision of a local building official. Such an aggrieved person may petition for the convening of a three member Board of Survey, an administrative body composed of a municipal representative, a representative selected by the petitioner himself, and a third, "neutral" member acceptable to, and selected by, the other two members. Alternatively, such an aggrieved person may, according to the defendants, appeal the decision of a municipal building official to a five member Board of Appeals. Decisions of Boards of Appeals are subject to review de novo by the State Building Code Standards Committee, whose decisions are, in turn, appealable to the State Court of Common Pleas.

The plaintiff does not dispute that an appeal from an adverse decision of a municipal building official may generally be perfected to a municipal Board of Appeals. Rather, the plaintiff submits that the appellate ladder portrayed by the defendants is unavailable to a person who, like the plaintiff, has been served with a demolition order. The "singular and final administrative remedy" available to such a person, the plaintiff maintains, is a review of that order by a three member Board of Survey, "the findings and determinations of any two members of [which] . . . shall be deemed conclusive, and . . . shall be binding upon the building official and all parties in interest." Conn. State Regs. § 19–395–126.52. The plaintiff equates this remedy with compulsory arbitration and contends, in effect, that a compulsory, non-reviewable administrative remedy is inadequate per se.

## I.

◾ The individual defendants' argument that Perzanowski's failure to exhaust state administrative remedies precludes an exercise of jurisdiction over his civil rights claim assumes that exhaustion of administrative remedies is required in § 1983 cases, and that the remedy available to him was, in fact, adequate. The defendants rely on the "long-standing doctrine of administrative law . . . that courts will not overturn actions of government agencies unless and until all statutorily provided remedies have been exhausted," K. Davis, Administrative Law Treatise, Sec. 20.01 et seq. (1958), and point specifically to Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970) and James v. Board of Education of Central District No. 1, 461 F.2d 566 (2d Cir.), cert. denied, 409 U.S. 1042, 93 S. Ct. 529, 34 L.Ed.2d 491 (1972). In James the Court stated

"It is no longer open to dispute that a plaintiff with a claim for relief under the Civil Rights Act, 42 U.S.C. § 1983, is not required to exhaust state judicial remedies. See, e. g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961); Rodriquez v. Mc-Ginnis, 456 F.2d 79 (2d Cir. 1972)

*(in banc)*; Sostre v. McGinnis, 442 F. 2d 178, 182 (2d Cir. 1971) *(in banc)*, cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). It is still the law in this Circuit, however, that a Civil Rights plaintiff must exhaust state administrative remedies." 461 F.2d at 570.

Although the Court in Goetz v. Ansell, 477 F.2d 636 (2d Cir. 1973), decided slightly less than a year after *James* appeared to qualify its earlier holdings in *James* and *Eisen* by "[p]utting to one side the question whether the doctrine . . . still applies in a section 1983 suit . . .," 477 F.2d at 637, n. 1, Gibson v. Berryhill, 411 U.S. 564, 93 S. Ct. 1689, 36 L.Ed.2d 488 (1973), and Blanton v. State University of New York, 489 F.2d 377, 383–384 (2d Cir. 1973), leave little doubt that a plaintiff can-

not turn his back on an adequate state administrative remedy and "rush into a federal forum."

Nevertheless, an analysis of the type suggested in Gibson v. Berryhill, *supra,* see Blanton v. State University of New York, *supra,* 489 F.2d at 384 n. 10, requires that the defendants' motion pursuant to Rule 12(b)(1) be denied. This result is mandated not by the persuasiveness of the plaintiff's argument that his state administrative remedy was inadequate,[1] but by the absence of an adequate factual basis for a finding that the plaintiff did, in fact, fail to exhaust the administrative remedy that was available to him.

A reading of section 19–395–127.1 of the State Building Code,[2] and Conn. Gen.Stat. § 19–402,[3] lends little support to the defendants' argument that the

---

1. The plaintiff argues that the failure of § 19–395–126.52 specifically to provide for state judicial review renders it inadequate and excuses his non-compliance with the exhaustion requirement. The argument ignores the fact that in James v. Board of Education of Central District No. 1, 461 F. 2d 566 (2d Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972), the plaintiff, who had sought and obtained administrative review under a statute which purported to make any decision of the State Commissioner of Education "final and conclusive, and not subject to question or review in any place or court whatever," 461 F.2d at 570 n. 10, was held to have followed the "course laid out by *Eisen.*" *Id.* The "course laid out by *Eisen*" to which the *James* Court referred was, of course, the pursuit of a plain, speedy, adequate administrative remedy. *See,* Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). Had the *James* Court been of the view that the mandatory language of § 310 of the New York Education Law, Consol. Laws, c. 16, made the remedy it provided inadequate, it is unlikely that it would have equated the remedy with the course discussed in *Eisen.*

2. Section 19–395–127.1 of the State Building Code deals with municipal Boards of Appeals and provides

"When the building official rejects or refuses to approve the mode or manner of construction proposed to be followed or the materials to be used in the erection or alteration of the buildings or structure, or

when it is claimed that the provisions of the code do not apply or that an equally good or more desirable form of construction can be employed in a specific case, or when it is claimed that the true intent and meaning of the code and regulations have been misconstrued or wrongly interpreted, the permit, in whole or in part, having been refused by the building official, the owner of such building or structure, whether already erected or to be erected, or his authorized agent may appeal in writing the decision of the building official to the Board of Appeals."

3. Connecticut General Statute § 19–402 also governs municipal Boards of Appeals and provides

"A board of appeals shall be appointed by each municipality. Such board shall consist of five members, all of whom shall meet the qualifications set forth in the state building code. A member of a board of appeals of one municipality may also be a member of the board of appeals of another municipality. When the building official rejects or refuses to approve the mode or manner of construction proposed to be followed or the materials to be used in the erection or alteration of a building or structure, or when it is claimed that the provisions of the code do not apply or that an equally good or more desirable form of construction can be employed in a specific case, or when it is claimed that the true intent and meaning of the code and regulations have been misconstrued or wrongly interpreted, the permit, in whole or in part, having been refused by the

plaintiff could have sought administrative review from a five member Board of Appeals whose ruling could ultimately be appealed to the State Court of Common Pleas. There is, therefore, support for the plaintiff's argument that a three member Board of Survey was the sole administrative forum available to him, and that state judicial review of its decision was unavailable. *See* e. g., State v. Vachon, 140 Conn. 478, 485, 101 A.2d 507 (1953); Bahr Corp. v. O'Brion, 146 Conn. 237, 247, 149 A.2d 691 (1958). The defendant Salvio's affidavit, which the Court has considered in support of the individual defendants' Rule 12(b)(1) motion, 2A Moore, Federal Practice ¶ 12.-09, falls far short of establishing that the plaintiff "turned his back" on the remedy available to him. That document, which raises as many questions as it answers, represents that the defendants advised the plaintiff of his "appeal rights," that the plaintiff sought review by a Board of Survey, but that the plaintiff "refused to cooperate in choosing the neutral third member of the Board as required by the State Building Code." The letters purporting to have advised the plaintiff of his appeal rights have not been made available to the Court, and thus it is impossible to ascertain whether he was advised correctly or whether the advice he received is consistent with the defendants' present view of those rights. Similarly, no explanation has been offered as to why the plaintiff's further "cooperation" was necessary, when section 19–395–126.2 of the Building Code expressly states that the "neutral member" of the Board of Survey "shall be . . . designated by a justice of the court of record in case of failure of agreement."

Blanton v. State University of New York, *supra*, at the very least establishes that Eisen's condemnation of "a wooden application of the exhaustion doctrine in cases under the Civil Rights Act" is still valid. In this Court's view, an application of that doctrine under the present circumstances would be "wooden" and is unwarranted. The defendants' motion to dismiss for failure to exhaust state administrative remedies is, therefore, denied.

## II.

The defendant municipality's motion to dismiss for failure to state a claim upon which relief can be granted is granted. Rule 12(b)(6), Fed.R.Civ.P.

■ It is well settled that a municipality is not a "person" within the meaning of 42 U.S.C. § 1983, *see* e. g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); City of Ke-

---

building official, the owner of such building or structure, whether already erected or to be erected, or his authorized agent may appeal in writing from the decision of the building official to the board of appeals. When a person other than such owner claims to be aggrieved by any decision of the building official, such person or his authorized agent may appeal, in writing, from the decision of the building official to the board of appeals, and before determining the merits of such appeal the board of appeals shall first determine whether such person has a right to appeal. Upon receipt of an appeal from an owner or his representative or approval of an appeal by a person other than the owner, the chairman of the board of appeals shall appoint a panel of not less than three members of such board to hear such appeal. Such appeal shall be heard in the municipality for which the building official serves within five days, exclusive of Saturdays, Sundays and legal holidays, after the date of receipt of such appeal. Such panel shall render a decision upon the appeal and file the same with the building official from whom such appeal has been taken not later than five days, exclusive of Saturdays, Sundays and legal holidays, following the day of the hearing thereon. A copy of such decision shall be mailed, prior to such filing, to the party taking such appeal. Any person aggrieved by the decision of a panel may appeal to the state building code standards committee within seven days after the filing of the decision with the building official. Any determination made by the local panel shall be subject to review de novo by said committee. Any person aggrieved by any ruling of the state building code standards committee may appeal to the court of common pleas in the county where such building or structure has been or is being erected."

nosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), and that jurisdiction is, therefore, lacking under 28 U.S.C. § 1343. Recognizing this, the plaintiff urges that 28 U.S.C. § 1331[4] be deemed an appropriate jurisdictional basis for the maintenance of his claim against the City of New Britain or, in the alternative, that his claim against the municipal defendant be entertained under the doctrine of "pendent jurisdiction."

■■ Section 1331(a) vests District Courts with original jurisdiction of civil actions arising under the Constitution and laws of the United States. Apart from the fourteenth amendment, the only "law" of the United States upon which the plaintiff relies is 42 U.S.C. § 1983, which will not support a claim against the municipal defendant. The complaint, however, alleges a deprivation by the defendant City of rights secured by the Due Process Clause and seeks damages far in excess of $10,000. Thus, to the extent that relief is sought under the fourteenth amendment, the plaintiff's claim "arises under the Constitution . . . of the United States," and jurisdiction over the subject matter exists under 28 U.S.C. § 1331(a). Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); cf. 27 Puerto Rican Migrant Farm Workers v. Shade Tobacco Growers Agricultural Association, Inc., 352 F.Supp. 986 (D.Conn.1973), aff'd, 486 F.2d 1052 (2d Cir. 1973). Despite its finding of jurisdiction under 28 U.S.C. § 1331, the Court, nevertheless, concludes that the complaint fails to state a claim upon which relief can be granted against the municipal defendant.

In support of its Rule 12(b)(6) motion, the municipal defendant relies on Fisher v. City of New York, 312 F.2d 890 (2d Cir. 1963), cert. denied, 374 U. S. 828, 83 S.Ct. 1866, 10 L.Ed.2d 1051; Spiesel v. City of New York, 239 F.

Supp. 106 (S.D.N.Y.1964); and the District Court opinion on remand in Bell v. Hood, 71 F.Supp. 813 (S.D.Cal.1947), for the proposition that the fourteenth amendment will not support a claim against a municipality for monetary damages. Although each case relied on by the defendant city is of pre-Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), vintage and neither *Fisher* nor *Spiesel* devotes extensive treatment to the issue, the result reached in each case is in accord with this Court's view of *Bivens* and recent Supreme Court decisions interpreting 42 U.S.C. § 1983. See City of Kenosha v. Bruno, *supra*, and generally, District of Columbia v. Carter, 409 U.S. 418, 425–429, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

Although *Bivens* dealt with the availability of a federal remedy against federal officers for a violation of rights secured by the fourth amendment, its analysis is arguably capable of being extended to create a remedy at law against state officers who have allegedly violated rights secured by other federal constitutional provisions. *But* see, Davidson v. Kane, 337 F.Supp. 922, 924–925 (E.D.Va.1972) (holding *Bivens* to be limited to violations of the fourth amendment and finding no federal cause of action for alleged violations of fifth amendment rights); and Smothers v. Columbia Broadcasting System, Inc., 351 F.Supp. 622, 626, n. 4 (C.D.Cal.1972) (dictum that the *Bivens* rationale is inapplicable to first amendment rights); *also see, Bivens, supra,* 403 U.S. at 409, n. 9, 91 S.Ct. at 2011 (Harlan, J., concurring, but suggesting that the propriety of an implied damage remedy "may well vary with the nature of the personal interest asserted"). Thus, it has been noted that

"In the wake of *Bivens*, the Court should consider not only the appropri-

---

4. 28 U.S.C. § 1331(a) provides:
   "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

ateness of creating a damage action against the United States, but the creation as well of a federal damage action against municipalities for the redress of constitutional violations committed by police and other law enforcement officers. . . . The *Bivens* decision leads to the rather striking conclusion that section 1983 may simply be unnecessary: money damages, as well as equitable relief, may be obtained in suits founded directly upon the Constitution. If it is 'appropriate' or 'necessary' for the victim of an unconstitutional exercise of official power to have a remedy that will make good the wrong done, then it seems wholly appropriate to afford a remedy against a local treasury . . . ." Dellinger, Of Rights and Remedies: The Constitution As a Sword, 85 Harv.L.Rev. 1532, 1558–1559 (1972) (footnotes omitted).

*See,* however, Washington v. Brantley, 352 F.Supp. 559 (M.D.Fla.1972); and Payne v. Mertens, 343 F.Supp. 1355, 1358 (N.D.Cal.1972), each holding, on different grounds, that the *Bivens* rationale will not support a federal action at law against a municipal defendant.

Whatever force there might conceivably be behind an application of *Bivens* in an action against a municipal defendant "seeking redress of constitutional violations committed by police . . . ," Dellinger, *supra,* 85 Harv.L.Rev. at 1558, is clearly lacking here. Unlike the present case, *Bivens* involved "no special factors counselling hesitation in the absence of affirmative action by Congress." 403 U.S. at 396, 91 S.Ct. at 2005. Here, there is no such "absence of affirmative action" *id.,* but if anything, an affirmative "judgment that the remedy of damages against municipalities should not be available . . . ." Dellinger, *supra,* 85 Harv.L.Rev. at 1559 n. 131. That Congressional judgment was considered in somewhat different context in City of Kenosha v. Bruno,

*supra,* 412 U.S. at 512, 93 S.Ct. at 2226, where the Court quoted Monroe v. Pape, 365 U.S. 167, 191, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961).

> "The response of Congress to the proposal to make municipalities liable for certain actions being brought within federal purview by the Act of April 20, 1871, was so antagonistic that we cannot believe that the word 'person' was used in this particular Act to include them."

Section 1983 "has its roots in § 1 of the . . . Act of Apr. 20, 1871," the primary purpose of which was " 'to enforce the Provisions of the Fourteenth Amendment.' " District of Columbia v. Carter, *supra,* 409 U.S. at 423, 93 S.Ct. at 605. At the time that Act was adopted, "there existed no general federal question jurisdiction." *Id.* at 427, 93 S. Ct. at 607. Congress' unwillingness to include municipalities within the definition of the word "person" in the Act it selected as the primary instrument to enforce the Equal Protection Clause of the fourteenth amendment is clearly entitled to weight in considering whether to imply a remedy against a municipality for damages arising from an alleged violation of the Due Process Clause.

So too are considerations of comity and federalism. In *Bivens,* there was "little to be gained from the standpoint of federalism", *id.* at 409 of 403 U.S., at 2011 of 91 S.Ct. (Harlan, J. concurring) by holding that the fourth amendment proscribed only that conduct condemned by state law, *id.* at 392, 91 S.Ct. 1999, especially where the action in question would have been removed to the federal courts anyway as a matter of policy. *Id.* at 391, 91 S.Ct. 1999. In the present case, however, the plaintiff seeks the implication of a monetary damage remedy against a political subdivision of a state which could not, itself, be sued in federal court due to the eleventh amendment,[5] and which was inten-

---

5. The eleventh amendment to the Constitution provides:

"The Judicial power of the United States shall not be construed to extend to any

tionally excluded from the purview of 42 U.S.C. § 1983. *See* Note, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 82 Harv.L.Rev. 1486, 1506 (1969).

These factors lead this Court to the conclusion that Fisher v. City of New York, *supra*, and Spiesel v. City of New York, *supra*, should be followed. *Also* see, Scolnick v. Winston, 219 F.Supp. 836, 839 (S.D.N.Y.1963), aff'd, 329 F.2d 716 (2d Cir.), cert. denied sub. nom. Scolnick v. Lefkowitz, 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964); Davidson v. Kane, 337 F.Supp. 922, 924–925 (E.D.Va.1972); Payne v. Mertens, 343 F.Supp. 1355, 1358 (N.D.Cal.1972); Washington v. Brantley, 352 F.Supp. 559, 565 (M.D.Fla.1972), *and* particularly Moor v. County of Alameda, 411 U.S. 693, 698–710 n. 27, 93 S.Ct. 1785, 36 L. Ed.2d 596 (1973). Accordingly, the Court grants the municipal defendant's motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P.

■ The plaintiff's final argument is that the "common nucleus of operative fact," which forms the basis for his claims against all defendants, makes his claim against the municipal defendant particularly appropriate for an exercise of "pendent jurisdiction" by this Court. See United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Assuming *arguendo*, as did the Courts in Moor v. County of Alameda, *supra*, and Gonzalez v. Doe, 476 F.2d 680, 686 n. 13 (2d Cir. 1973), that power exists to hear such a claim under the doctrine of pendent jurisdiction, the Court concludes that its exercise would be inappropriate under the circumstances here present. As the Court recently stated in Alexander v. Town of Hartford, Civil No. 15,451 (D.Conn. June 19, 1973) at 3,

"With respect to the defendant City of Hartford it may well be 'estopped from asserting any claim that it will not pay such a verdict, should one be entered against its individual employee[s].' Thus, if the plaintiffs prevail against the individual defendants, it is questionable whether, as a practical matter, a separate and independent action against the municipal defendants would be necessary."

. . . .

"Considered in light of the strong possibility that a jury 'might be prejudiced against the other defendants if it knew from the claim against the City as a defendant that it might be obligated to pay any judgment . . .,' the circumstances weigh more heavily against an exercise of pendent jurisdiction over these claims."

Accordingly, the Court will not exercise "pendent jurisdiction" over the plaintiff's claims against the defendant City of New Britain.

### III.

■ ■ The individual defendants' motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P., is denied. While it is certainly true, as the defendants suggest, that local administrative officials may well be shielded by immunity from liability for acts which occur during the good faith performance of their official function, see e. g., Jones v. Perrigan, 459 F.2d 81 (4th Cir. 1972); Bennett v. Gravelle, 323 F.Supp. 203, 212–215 (D.Md.) aff'd, 451 F.2d 1011 (4th Cir. 1971), it is equally true that an adequate factual basis must precede a "finding of good faith." The present record before the Court clearly provides no such basis. The individual defend-

suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
As construed, the eleventh amendment is a jurisdictional bar to suits in federal court against an unconsenting state. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.

842 (1890). However, the immunity conferred by the amendment has been held not to extend to a municipality or a municipal agency. *See* e. g., Workman v. City of New York, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314 (1900); Bennett v. Gravelle, 323 F. Supp. 203, 216 (D.Md.), aff'd, 451 F.2d 1011 (4th Cir. 1971).

ants' motion to dismiss for failure to state a claim upon which relief may be granted is, therefore, denied.

Accordingly, an order may enter granting the City of New Britain's motion to dismiss the complaint against it. The individual defendants' motions to dismiss made pursuant to Rule 12(b)(6) and (1), Fed.R.Civ.P., however, are denied.

So ordered.