Margie Lemon **RAFFETY** and Robert Raymond Raffety, Plaintiffs,

v.

**PRINCE GEORGE'S COUNTY** et al., **Defendants.**

Civ. A. No. M–75–768.

United States District Court, D. Maryland.

Nov. 1, 1976.

Jayson Amster, Upper Marlboro, Md., and Harvey M. Katz, Washington, D. C., for plaintiffs.

James C. Chapin, Ellis J. Koch, and Robert N. Boyer, Upper Marlboro, Md., for Kelly, Rhoads, Briguglio, Connor, Fitzpatrick, Vasco, Wiseman, and Malberg.

Edward P. Camus, Riverdale, Md., for Prince George's County, Hatfield, and Tucker.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

This suit arises out of a tragic incident on January 21, 1975, in which the plaintiffs' residence in Prince George's County caught fire and their three children were killed. The plaintiffs allege that an investigation of them in connection with this fire by various agents of Prince George's County[1] was malicious and racially motivated. The plaintiffs are husband and wife; Mrs. Raffety is black and her husband is white. According to the amended complaint, the central characters in this investigation were two County police officers, David Hatfield and R. Tony Tucker. The plaintiffs allege that shortly after the fire, Mrs. Raffety was brought to a police barracks in Maryland and "confronted by defendants Hatfield and Tucker, who detained her against her will for a period in excess of 14 hours during which time they repeatedly accused her of murdering her own children, repeatedly made her believe that she would suffer immediate bodily harm, repeatedly harassed and intimidated her, and repeatedly made her suffer extreme emotional distress and physical pain and discomfort." The amended complaint states that upon hearing that his wife had been taken to the police barracks, Mr. Raffety went to the barracks to obtain her release. Thereupon,

allegedly, he also was confronted by Officers Hatfield and Tucker and was "detained against his will for a period in excess of ten hours" during which time he was subjected to treatment similar to that inflicted upon his wife. The plaintiffs further allege that they were denied access to counsel during these detentions.

Officers James Fitzpatrick, Robert Vasco, and James Wiseman are "supervisory police officers" of the County. The amended complaint states that the investigation continued after these detentions and that the "plaintiffs were and continue to be the target of a malicious campaign conducted by defendants Hatfield, Tucker, Fitzpatrick, Vasco, and Wiseman, such campaign having been designed by said defendants to discredit the plaintiffs, damage their reputation, invade the privacy and sanctity of their lives, and cause them embarrassment, humiliation, and severe mental and physical distress." The amended complaint also states that during this campaign, oral and written statements [were made] to the effect that plaintiffs are persons of low moral character who are capable of and did in fact murder their own children and that these defendants "made totally unjustified and wrongful inquiry into . . . [their] private lives." The plaintiffs allege that this entire investigation was inspired by malice and racial prejudice rather than by probable cause to believe that the plaintiffs were the cause of their children's deaths.

The County, Winfield Kelly, John W. Rhoads, George Connor, Frank Briguglio, and David J. Malberg are also defendants in this suit. Mr. Kelley is the chief executive officer of the County, and Mr. Rhoads is the chief executive officer of the police department. Mr. Connor is the officer in charge of police training for the County. Messrs. Briguglio and Malberg are associated with the County's fire department; Mr. Briguglio is the chief executive officer of that department and Mr. Malberg is employed by it as a fire investigator.

The plaintiffs allege that their injuries were caused by the establishment by the

---

1. Hereinafter referred to as the County.

individual defendants and the County of policies, guidelines, and patterns of conduct in law enforcement activities which are designed to deny members of the black race, and persons who associate with them, equal protection of the law. With respect to the individual defendants only, the plaintiffs more specifically allege that included among these policies, guidelines, and patterns of conduct are "the hiring and selection as police officers of individuals biased against members of the black race and biased against persons who associate with members of the black race; the hiring as police officers of individuals with brutal dispositions and with tendencies to violate the constitutional rights of others; the training of employees with law enforcement responsibilities in investigatory methods that are violative of constitutional rights and likely to injure citizens; the refusal to discipline or remove from office law enforcement personnel whose biases, brutal dispositions and recklessness violate constitutional rights and do injury to others; the conduct of criminal arson investigations in a reckless manner so as to cause directly violations of constitutional rights and great harm to others; the conduct of police investigations in a manner deliberately designed to bring harm to individuals without reasonable cause and to violate the constitutional rights of citizens."

With respect to Messrs. Briguglio and Malberg, the following is alleged:

"The foregoing actions of defendants Hatfield, Tucker, Fitzpatrick, Vasco and Wiseman were caused in part by the action of defendants Briguglio and Malberg in advising the County police that the fire in question was caused by arson. The aforesaid action was wrongful, reckless and totally without justification. In taking such action, defendants Briguglio and Malberg knew that such action would directly cause great injury to plaintiffs. Such action of defendants Briguglio and Malberg was part of a continuing pattern of conduct of said defendant which directly and repeatedly (sic) violates the constitutional rights of citizens."

The suit is brought pursuant to the Fourteenth Amendment and to 42 U.S.C. §§ 1981 and 1983 with jurisdiction alleged under 28 U.S.C. §§ 1331 and 1343. The plaintiffs pray compensatory and punitive damages against the defendants in the amount of $250,000 along with "such other and further relief as may be just and proper" for the "violation of rights guaranteed by the Constitution of the United States, false imprisonment, assault, invasion of privacy, slander, libel, negligence and willful infliction of mental distress." The case is now before the court on defendants' motions to dismiss the amended complaint.

## I.

### Defendants Tucker and Hatfield

Officers Tucker and Hatfield have moved to dismiss the amended complaint because it fails to state a claim upon which relief can be granted. They contend that "the alleged improper interrogation did not constitute a denial of any constitutional rights of the plaintiffs" and cite numerous cases which hold that the failure to advise one of *Miranda* rights does not create a cause of action under the Civil Rights Acts. *See, e. g., Allen v. Eicher*, 295 F.Supp. 1184 (D.Md. 1969) and *Thornton v. Buchmann*, 392 F.2d 870 (7th Cir. 1968).

These defendants also cite *Ambrek v. Clark*, 287 F.Supp. 208 (E.D.Pa.1968) and *Duncan v. Nelson*, 466 F.2d 939 (7th Cir. 1972). In *Ambrek*, the court indicated that a cause of action could be maintained under the Civil Rights Acts where a confession obtained from the plaintiff in violation of the precepts of *Miranda* was subsequently used against the plaintiff in a criminal proceeding. In *Duncan*, the court found that a civil rights action was maintainable upon the allegation that an involuntary confession was elicited from the plaintiff by police using tactics which violated the due process clause of the Fourteenth Amendment. These defendants then argue that "since no confessions were obtained and used against the Plaintiffs there has been no deprivation of any rights, privilege, or immunity pro-

vided by the Constitution or the Laws of the United States."

◾ This argument misconstrues the nature of plaintiffs' suit. It assumes that it is based solely upon the failure to provide *Miranda* warnings and the attempted elicitation from the plaintiffs of an involuntary confession. However, the gravamen of plaintiffs' amended complaint is their contention that the detention, interrogation, and subsequent investigation of them by Officers Tucker and Hatfield was racially motivated and not based upon probable cause. These allegations constitute a cause of action under 42 U.S.C. § 1983. The plaintiffs' amended complaint does not even mention *Miranda* warnings.[2]

◾ Officers Tucker and Hatfield also argue that the "alleged defamation of the plaintiffs fails to state a claim upon which relief can be granted in that a defamed person has not been deprived of any right, privilege, or immunity secured to him by the Constitution and Laws of the United States." However, these defendants fail to consider the doctrine of pendent jurisdiction which a federal court has the power to exercise when the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). "If, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *Id.* (Emphasis in original). The court believes that the state claims alleged against Officers Tucker and Hatfield meet the *Gibbs* test. Although this power to hear the state claims need not be exercised in every case, considerations of judicial economy, convenience, and fairness to the parties, along with an absence of factors calling for hesitation, compel the court to exercise its power in this instance. *See id.* at 726, 86 S.Ct. 1130.

◾ Finally, these defendants argue that the plaintiffs have failed to allege sufficiently specific facts to sustain several of their allegations. However, the Federal Rules of Civil Procedure require only that a defendant be given fair notice of a claim and the grounds upon which it rests. *Dearman v. Woodson,* 429 F.2d 1288 (10th Cir. 1970). The court believes that the amended complaint is sufficiently specific under the Rules.

II.

*Defendants Kelly, Rhoads, Connor, Fitzpatrick, Vasco, Wiseman, Briguglio, and Malberg*

◾ These defendants also have moved to dismiss the amended complaint because it allegedly fails to state a claim upon which relief can be granted. They first contend that a cause of action under 42 U.S.C. §§ 1981 and 1983 cannot be brought for damages against government officials or employees acting in their official capacities. *See Bennett v. Gravelle,* 323 F.Supp. 203 (D.Md.1971), *aff'd,* 451 F.2d 1011 (4th Cir. 1971). The court agrees with this argument as to § 1983. As to § 1981, recent authoritative decisions belie the argument. *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Tillman v. Wheaton-Haven Recreation Assoc., Inc.,* 410 U.S. 431, 440, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); *Baker v. F. & F. Investment Co.,* 489 F.2d 829 (7th Cir. 1973); *Robinson v. Conlisk,* 385 F.Supp. 529 (N.D.Ill.1974). In any event, the answer to the argument is simply that this action is brought against these defendants individually and not in their official capacities.

Their next contention is that "traditional doctrines of Governmental Immunity are an absolute defense even if the aforesaid defendants are subject to suits under 42 U.S.C. § 1981 and 42 U.S.C. § 1983." The history of Supreme Court decisions with respect to immunity of governmental offi-

---

2. The plaintiffs' only allegation along this line is that during their detention by Officers Tuck-

er and Hatfield they were "denied access to counsel."

cials under § 1983 is summarized in *Wood v. Strickland,* 420 U.S. 308, 316–318, 95 S.Ct. 992, 998, 43 L.Ed.2d 214 (1974), as follows:

"This Court has decided three cases dealing with the scope of the immunity protecting various types of governmental officials from liability for damages under § 1983. In *Tenney v. Brandhove,* 341 U.S. 367 [71 S.Ct. 783, 95 L.Ed. 1019] (1951), the question was found to be one essentially of statutory construction. Noting that the language of § 1983 is silent with respect to immunities, the Court concluded that there was no basis for believing that Congress intended to eliminate the traditional immunity of legislators from civil liability for acts done within their sphere of legislative action. That immunity, 'so well grounded in history and reason . . . ,' *id.,* at 376 [71 S.Ct. at 788], was absolute and consequently did not depend upon the motivations of the legislators. In *Pierson v. Ray,* 386 U.S. 547, 554 [87 S.Ct. 1213, 1218, 18 L.Ed.2d 288] (1967), finding that '[t]he legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities' in enacting § 1983, we concluded that the common-law doctrine of absolute judicial immunity survived. Similarly, § 1983 did not preclude application of the traditional rule that a policeman, making an arrest in good faith and with probable cause, is not liable for damages, although the person arrested proves innocent. Consequently the Court said: 'Although the matter is not entirely free from doubt, the same consideration would seem to require excusing him from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional, on its face or as applied.' *Id.,* at 555 [87 S.Ct. at 1218] (footnote omitted). Finally, last Term we held that the chief executive officer of a State, the senior and subordinate officers of the State's National Guard, and the president of a state-controlled university were not absolutely immune from liability under § 1983, but instead were entitled to immunity, under prior precedent and in light of the obvious need to avoid discouraging effective official action by public officers charged with a considerable range of responsibility and discretion, only if they acted in good faith as defined by the Court:

'[I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with a good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.' *Scheuer v. Rhodes,* 416 U.S. 232, 247–248 [94 S.Ct. 1683, 1692, 40 L.Ed.2d 90] (1974).

"Common-law tradition, recognized in our prior decisions, and strong public-policy reasons also lead to a construction of § 1983 extending a qualified good-faith immunity to school board members from liability for damages under that section. Although there have been differing emphases and formulations of the common-law immunity of public school officials in cases of student expulsion or suspension, state courts have generally recognized that such officers should be protected from tort liability under state law for all good-faith nonmalicious action taken to fulfill their official duties."

■ Obviously, any immunity which may extend to these defendants is qualified and subject to their proof at trial that they acted upon reasonable grounds and in good faith.[3] This defense cannot support a motion to dismiss.

---

**3.** *But see Bennett v. Gravelle,* 323 F.Supp. 203 (D.Md.1971), *aff'd,* 451 F.2d 1011 (4th Cir. 1971), where the court was of the opinion that the defenses of good faith and probable cause are not applicable where racial discrimination is proved.

■ Their third contention is that the amended complaint contains no 'specific facts supporting direct participation' by them and that the doctrine of *respondeat superior* does not apply to actions under 42 U.S.C. §§ 1981 and 1983. The court agrees that the doctrine of *respondeat superior* is not applicable under §§ 1981 and 1983. *See Bennett v. Gravelle, supra,* at 214; *Richardson v. Snow,* 340 F.Supp. 1261, 1262 (D.Md. 1972); *Barrow v. Bounds,* 498 F.2d 1397 (4th Cir. 1974). However, the allegations against these defendants are not based upon the doctrine of *respondeat superior.*

■ Officers Fitzpatrick, Vasco, and Wiseman are alleged to have participated in a racially motivated investigation of the plaintiffs. Messrs. Briguglio and Malberg are alleged to have advised the County police without justification that the fire in the plaintiffs' residence was caused by arson. Messrs. Kelly and Rhoads and Officer Connor along with the other defendants are alleged to have established policies, guidelines and patterns of conduct *designed* to deny members of the black race equal protection of the law. These allegations set forth claims against these defendants based upon their own acts and not those of others.

The fourth argument of these defendants is that "plaintiffs' complaints for false imprisonment, assault, invasion of privacy, slander, libel, negligence, and infliction of willful distress are not within the scope of 28 U.S.C. § 1331 because they do not arise under the Constitution, Law or Treaties of the United States." The court agrees; however, jurisdiction over these claims is proper under the doctrine of pendent jurisdiction.

Finally, citing *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), these defendants contend: "As specifically concerns the defendants' promulgation of policies, guidelines and patterns of practice, the plaintiffs clearly do not have standing to sue because their interest therein is no more than that held in common by all members of the public."

In *Schlesinger,* the Court was concerned with the standing of United States citizens and taxpayers to challenge under Article I, section 6, clause 2 of the Constitution[4] the eligibility of a member of Congress to hold a commission in the Armed Forces Reserve during his continuance in office. The Court first considered plaintiffs' standing as citizens and held that "standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Id.* at 220, 94 S.Ct. at 2932. The Court also refused to allow plaintiffs' standing as taxpayers because they did not meet the test set out in *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). In discussing citizen standing, the Court quoted from *Ex parte Levitt,* 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937), as follows: "It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public." 418 U.S. at 220–221, 94 S.Ct. at 2931.

■ Plaintiffs allege that the policies, guidelines and patterns of practice established by these defendants caused them to be detained, interrogated, and investigated because of Mrs. Raffety's race. Obviously, they allege direct, non-abstract injury which is unique from that sustained in common by all members of the public, and, consequently, they have standing to make this claim.

---

4. Article I, § 6, cl. 2, of the Federal Constitution provides:

"No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been increased during such time; and no person holding any Office under the United States, shall be a Member of either House during his Continuance in Office."

## III

### *Prince George's County*

#### A.

The County has moved to dismiss the amended complaint because of lack of jurisdiction and the failure to state a claim against it upon which relief can be granted.

The County first contends that it is not amenable to suit under 42 U.S.C. § 1983 because it is not a "person" within the meaning of that statute. The court agrees. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and Order of September 3, 1975, previously entered in this case (Paper #12).

The County's second contention is that a claim has not been stated against it cognizable under 28 U.S.C. § 1331.

In *Patterson v. Ramsey*, 413 F.Supp. 523, 527–29 (D.Md.1976), Judge Young framed the problem as follows:

*"The Fourteenth Amendment Issues:*

"(a) Does 28 U.S.C. § 1331 give this Court jurisdiction over cases brought directly under the Fourteenth Amendment?

"(b) Does the Fourteenth Amendment provide a *cause of action* for injunctive relief and/or damages?"

He then went on to state the following:

"The Court has separated the issues of jurisdiction and cause of action (as is reflected above). Failure to separate these issues has often resulted in conceptual confusion by courts and commentators.

"Before discussing these issues, it is best to determine what is at stake in their resolution. The Supreme Court has determined that municipalities and their agencies cannot be sued under 42 U.S.C. § 1983 for monetary or injunctive relief, since they are not 'persons' within the contemplation of the statute. *Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Thus, if these entities can be sued in federal court, they must be sued directly under the Fourteenth Amendment.

"(a)—The first issue which must be addressed is the question of this Court's jurisdiction (under section 1331) of suits filed directly under the Fourteenth Amendment. 28 U.S.C. § 1331 provides as follows:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, *and arises under the Constitution*, laws or treaties of the United States. [Emphasis supplied.]

A suit directly based on the Fourteenth Amendment would seem to be the paradigm of a case 'arising under' the Constitution. Furthermore, the 'person' requirement of section 1983 is absent from § 1331(a). The conclusion that jurisdiction exists is supported by overwhelming authority. *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569 (7th Cir. 1975); *Gray v. Union County Intermediate Education District*, 520 F.2d 803 (9th Cir. 1975); *Calvin v. Conlisk*, 520 F.2d 1 (7th Cir. 1975); *Hanna v. Drobnick*, 514 F.2d 393 (6th Cir. 1975); *Roane v. Callisburg Independent School District*, 511 F.2d 633 (5th Cir. 1975); *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3d Cir. 1974); *Traylor v. City of Amarillo*, 492 F.2d 1156 (5th Cir. 1974); *Clipper v. Takoma Park, Maryland*, Civil No. 73–295–B (D.Md. March 25, 1975); *Dahl v. City of Palo Alto*, 372 F.Supp. 647 (N.D.Cal. 1974); *Perzanowski v. Salvio*, 369 F.Supp. 223 (D.Conn.1974). *See also* the remand instructions in *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), and *Cox v. Stanton*, 529 F.2d 47 (4th Cir. 1975). Jurisdiction is available under 28 U.S.C. § 1331 for a suit directly under the Fourteenth Amendment.

"(b)—The finding of a jurisdictional basis for the suit does not end the inquiry, however. The Court must determine whether the rights granted to the people by the Fourteenth Amendment

provide for a cause of action directly under that amendment. The federal courts have recognized that they possess the power to grant equitable relief against municipalities for their violations of rights secured by the Fourteenth Amendment. *Griffin v. County School Board,* 377 U.S. 218, 233–234, 84 S.Ct. 1226, 1234–1235, 12 L.Ed.2d 256, 266–267 (1964); *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *School Board v. Allen,* 240 F.2d 59, 63 (4th Cir. 1956), *cert. denied,* 353 U.S. 910, 77 S.Ct. 667, 1 L.Ed.2d 664 (1957); *Clipper v. Takoma Park, Maryland,* Civil No. 73–295–B (D.Md. March 25, 1975); *Booth v. Prince George's County,* 66 F.R.D. 466 (D.Md.1975). This Court concludes, then, that as regards plaintiff's claim for injunctive relief, he has a cause of action directly under the Fourteenth Amendment against the Board.

"A more difficult question is whether this amendment provides a cause of action in damages against a municipality. Plaintiff argues that *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is authority for the proposition that a damage remedy should be implied under the Fourteenth Amendment. A strong argument for this position is that it is anomalous to assert that injunctive relief is available directly under the Fourteenth Amendment while damages are not. A further argument stems from the general principle that federal courts should imply all remedies necessary to safeguard federal rights. If no remedy is available in damages against a municipality, a plaintiff's damage remedies (limited as they are by 42 U.S.C. § 1983) exist only against officials who may not have the resources to meet a judgment.

"Several strong arguments have also been advanced against the implication of a damage remedy. It has been argued that *Bivens* is not good precedent for such a remedy here. *Bivens* involved a federal court remedy against federal officials; here the problem is an implied federal damage remedy against municipalities, counties and their agencies. Consequently, federalism, a concept properly ignored in *Bivens,* militates against the implication of a damage remedy. *See Clipper v. Takoma Park, Maryland, supra* at p. 25. Another argument is that *Bivens* is inapplicable since Congress has already spoken with regard to damage remedies against municipalities. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), interpreted the legislative history of 42 U.S.C. § 1983 to indicate a congressional intention not to impose liability on municipalities. The courts, it is argued, should not imply a remedy which Congress considered and purposely abandoned. *See Clipper v. Takoma Park, Maryland, supra* at p. 21; *Perzanowski v. Salvio, supra* at p. 230.

"The competing arguments briefly noted above, appear strong. The question is a difficult one which this Court need not decide at this time since plaintiff has failed to prove any damage claim against the Board. For the purpose of this case it is sufficient to find that section 1331(a) gives this Court jurisdiction over claims brought directly under the Fourteenth Amendment, and that that amendment provides a direct cause of action, at least for injunctive relief." 413 F.Supp. at 527–29.

■ In their amended complaint, the plaintiffs state that they "were and continue to be the target of a malicious campaign conducted by defendants Hatfield, Tucker, Fitzpatrick, Vasco and Wiseman." Although they pray compensatory and punitive damages in the amount of $250,000, they also seek "such other and further relief as may be just and proper." Therefore, the court may deem it "just and proper" to enjoin the County and its agents from further investigation of the plaintiffs. The court believes that a claim against the County for this relief has been stated directly under the Fourteenth Amendment and that this claim is cognizable under 28 U.S.C. § 1331.

### B.

The question of whether a claim for damages has been stated against the County cognizable under § 1331 is considerably more difficult to resolve.

In *Donohoe Construction Company, Inc. v. Maryland-National Capital Park and Planning Commission,* 398 F.Supp. 21 (D.Md.1975), Judge Young decided that the Fourteenth Amendment did provide a cause of action in damages against a municipality for the alleged taking of the plaintiff's property by promulgation of zoning plans, ordinances, and building permit decisions. However, this decision may be rationalized upon the ground that the Fifth Amendment's prohibition of taking of property without "just compensation" is *sui generis* among constitutional rights in that it explicitly provides for a monetary remedy.[5] *See Municipal Liability in Damages for Violations of Constitutional Rights—Fashioning a Cause of Action Directly from the Constitution—Brault v. Town of Milton,* 527 F.2d 730 (2d Cir. 1975), Conn.L.Rev., Vol. 7, p. 552 (1975).

Although the Fourth Circuit has not definitively ruled on the question, there is some indication that it supports a *Bivens* remedy under the Fourteenth Amendment against municipalities. In *Singleton v. Vance County Board of Education,* 501 F.2d 429, 433 (4th Cir. 1974), Judge Winter, in a concurring and dissenting opinion, was of the tentative view ("subject to alteration if the point were briefed and argued or when the point is briefed and argued") that the plaintiff's claim against the Vance County Board of Education for back pay arose "directly under the fourteenth amendment, irrespective of § 1983, and the district court had jurisdiction under 28 U.S.C. § 1331 to render it."[6]

In *Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975), the plaintiff brought suit against the County of Washington and numerous other defendants for damages and a declaratory judgment alleging that a sterilization operation performed upon her violated her rights under the Thirteenth and Fourteenth Amendments. The district court ruled that her damage claim was barred by the applicable statute of limitations and that she lacked standing to seek declaratory judgment. In an opinion by Judge Winter, the Court of Appeals reversed the dismissal of the damage claim because the district court had incorrectly applied the statute of limitations and remanded for further proceedings. In the final paragraph of the opinion, the court stated the following:

> "Although the district court held that the suit against the County of Washington, joined as a defendant in plaintiff's amended complaint, should be dismissed as barred by the statute of limita-

---

5. "The [Supreme] Court has held, in deciding appeals from the state courts, that actions against municipalities for takings of property without just compensation state a right of action for damages directly under the fourteenth amendment. *Griggs v. Allegheny County,* 369 U.S. 84 [, 82 S.Ct. 531, 7 L.Ed.2d 585] (1962); *Hopkins v. Clemson Agricultural College,* 221 U.S. 636, 645–46 [, 31 S.Ct. 654] (1911); *Chicago B. & O. R.R. v. City of Chicago,* 166 U.S. 226, 241 [, 17 S.Ct. 581, 41 L.Ed. 979] (1897). Although no case could be found in which the Supreme Court has decided the issue whether the federal courts may entertain actions for damages against municipalities under the taking clause, the Court has upheld § 1331 jurisdiction in actions seeking equitable relief for takings. *E. g., Mosher v. City of Phoenix,* 287 U.S. 29 [, 53 S.Ct. 67, 77 L.Ed. 148] (1932). The lower federal courts have routinely entertained actions for damages for takings since long before *Bivens* was decided. *E. g., Foster v. City of Detroit,* 405 F.2d 138, 144 (6th Cir. 1968), *aff'g* 254 F.Supp. 655 (E.D.Mich.1966); *Miller v. County of Los Angeles,* 341 F.2d 964, 966 (9th Cir. 1965); *Foster v. Herley,* 330 F.2d 87, 90–91 (6th Cir. 1964); *Lowe v. Manhattan Beach City School Dist.,* 222 F.2d 258, 259–60 (9th Cir. 1955); *Amen v. City of Dearborn,* 363 F.Supp. 1267, 1270 (E.D.Mich.1973); *Sayre v. United States,* 282 F.Supp. 175, 181–85 (N.D. Ohio 1967)." *Damage Remedies Against Municipalities For Constitutional Violations,* 89 Harv.L.Rev. 922, 951, n. 145 (1976).

6. The court remanded the case with leave to the plaintiff to amend the jurisdictional allegation. Judge Winter's dissent was based upon his opinion that the case should not be remanded "without first requiring the parties to file supplemental briefs in order to determine what parts, if any, of the jurisdictional question . . . [the court could] decide without further proceedings in the district court."

tions, it added that the County of Washington was not amenable to suit under § 1983 because the county is not a 'person.' The district court was undoubtedly correct. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Singleton v. Vance County Board of Education,* 501 F.2d 429 (4 Cir. 1974). The district court should not overlook, however, that plaintiff sues directly under the thirteenth and fourteenth amendments, as well as under § 1983. *Brault v. Town of Milton,* 527 F.2d 730 (2 Cir. 1975), held that 28 U.S.C. § 1331 sustains jurisdiction for a direct action under the fourteenth ,amendment against a municipality not subject to § 1983 suit. *See also Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Singleton v. Vance County Board of Education,* supra, (Winter, J., concurring and dissenting); *Dahl v. City of Palo Alto,* 372 F.Supp. 647 (N.D.Cal.1974); Dellinger, Of Rights and Remedies: The Constitution as a Sword, 85 Harv.L.Rev. 1532, 1553–59 (1972)." 529 F.2d at 50–51.

In *Brault v. Town of Milton, supra,* 527 F.2d 731, 734–35 (2d Cir. 1975) (panel opinion),[7] cited by the Fourth Circuit in *Cox v. Stanton,* 529 F.2d 47, 50–51, the court held that the Fourteenth Amendment provided a cause of action in damages against a municipality for its alleged taking of the plaintiffs' property by its enforcement of a zoning ordinance. The court reasoned as follows:

"We conclude, therefore, that the Braults' invocation of the Fourteenth Amendment's Due Process Clause as the source of their claim for relief comes within *Bivens'* sweeping approbation of constitutionally-based causes of action.

"As the Court in *Bivens* indicated, however, the adjudication of some claims rooted in the Constitution may be precluded by 'special factors counselling hesi-

tation in the absence of affirmative action by Congress.' *Id.* [403 U.S.] at 396, 91 S.Ct. at 2005. In the case now before us, the appellee has brought to the court's attention only one potential 'special factor': the defendant is a municipality. Since Congress excluded municipalities from the scope of 42 U.S.C. § 1983, *Monroe v. Pape,* 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), it may be argued that courts should be slow to infer that Congress meant in later enacting 28 U.S.C. § 1331 to provide an alternative device to sue municipalities for violations of federal rights. *See Perzanowski v. Salvio,* 369 F.Supp. 223, 230 (D.Conn. 1974). If a construction of § 1331 as authorizing such suits would render meaningless the immunity enjoyed by municipalities under § 1983, we might find this argument more persuasive. This is not in fact the case, however, for § 1331, with its amount in controversy requirement, would preserve the municipality's § 1983 immunity as to actions not involving this minimum sum; suits based on § 1983, it will be remembered, *see supra,* need not satisfy an amount in controversy requirement. *Bell v. Hood* [327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939] and *Bivens* itself, moreover, caution against assuming that Congress' exemption for municipalities under § 1983 informed its efforts four years later in establishing federal question jurisdiction. For while Congress placed suits against federal officials beyond the scope of § 1983 with no less—and, indeed, probably far more—clarity than it proscribed suits against municipalities, the Court in these two cases confirmed that § 1331 vested federal jurisdiction over civil rights actions against federal officers. We reject the view, therefore, that municipalities enjoy any special status which would immunize them from suits to redress deprivations of federal constitutional rights. *See City of Kenosha v. Bruno,* 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (concur-

---

**7.** The Second Circuit *en banc* withdrew the panel opinion on the ground that the facts of the case did not require a decision on the ques-

tion of whether the Fourteenth Amendment gives a direct right of action against a municipality for damages, 527 F.2d at 736–741.

ring opinion of Brennan & Marshall, JJ.); *Dupree v. City of Chattanooga,* 362 F.Supp. 1136, 1138–39 (E.D.Tenn.1973); Dellinger, *Of Rights and Remedies: The Constitution as a Sword,* 85 Harv.L.Rev. 1532, 1558–59 (1972).

"The plaintiffs have stated a cause of action under the Due Process Clause of the Fourteenth Amendment for which relief may be granted. We therefore reverse the district court's dismissal of the complaint and remand for trial." (Footnotes omitted).

The *Brault* court did not consider the line of federal cases which have permitted a cause of action for damages against municipalities under the Fifth and Fourteenth Amendments when the taking of "private property . . . for public use, without just compensation" is alleged.[8] The controversy has been increased by the concurrence of Justices Brennan and Marshall in *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), which stated:

"Although I join the opinion of the Court, I would add that I find unimpeachably correct the District Court's conclusion that appellants failed to comply with the requirements of the Due Process Clause in denying renewal of appellees' liquor licenses. Nevertheless, since the defendants named in the complaints were the municipalities of Kenosha and Racine, jurisdiction cannot be based on 28 U.S.C. § 1343. *Moor v. County of Alameda,* 411 U.S. 693 [93 S.Ct. 1785, 36 L.Ed.2d 596] (1973); *Monroe v. Pape,* 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961). Appellees did assert 28 U.S.C. § 1331 as an alternative ground of jurisdiction, but I agree with the Court's conclusion that existence of the requisite amount in controversy is not, on this record, clearly established. If appellees can prove their allegation that at least $10,000 is in controversy, then § 1331 jurisdiction is available, *Bell v. Hood,* 327 U.S. 678 [66 S.Ct. 773, 90 L.Ed. 939] (1946); cf. *Bivens v. Six Fed. Narcotics Agents,* 403 U.S. 388 [91 S.Ct. 1999, 29 L.Ed.2d 619] (1971), and they are clearly entitled to relief."

412 U.S. at 516, 93 S.Ct. at 2228. In *Bivens,* the Supreme Court held that a cause of action for monetary damages against a federal agent for violations of the Fourth Amendment could be based directly upon the substantive provisions of the Amendment. The opinion of the Court betrayed no uncertainty that the Court had the power to grant the relief:

". . . That damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials should hardly seem a surprising proposition. Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty. Of course, the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation. But 'it is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.' *Bell v. Hood,* 327 U.S. at 684, 66 S.Ct. 773, . . . ."

403 U.S. at 396, 91 S.Ct. 1999, at 2004 (citations omitted).

While the stature of those arguing to the contrary is impressive, see *Kenosha, supra,* 412 U.S. at 516, 93 S.Ct. at 2222 (Brennan and Marshall, JJ., concurring); 85 Harv.L.Rev. 1532; nevertheless this court is of the view that it does not have the power to grant monetary damages as relief in actions brought directly under the Fourteenth Amendment.

Congress has acted to implement the provisions of the Fourteenth Amendment pursuant to the power given to that body under Section 5 of the Amendment. *See* 42 U.S.C. § 1983. Since *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), it has been settled that municipalities are not subject to suit under § 1983. Instead,

---

**8.** See footnote 5 and accompanying text.

an aggrieved party must present his claim against the individuals responsible for his injuries. As Judge Blair recognized in *Clipper v. Takoma Park,* Civil No. 73–295–B (D.Md. March 25, 1975), if a plaintiff may obtain monetary relief against municipalities under the Fourteenth Amendment, an action under § 1983 becomes unnecessary, except where a plaintiff is unable to establish the jurisdictional amount of $10,000 under 28 U.S.C. § 1331. The existence of the cause of action provided by § 1983 and, specifically, the limitations placed upon that cause of action by Congress as determined in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473 (1961), significantly undercut the contention that the *Bivens* holding should be applied to a Fourteenth Amendment claim. *See Clipper, supra* at 20–21; *Patterson v. Ramsey,* 413 F.Supp. 523 (D.Md.1976); *Perzanowski v. Salvio,* 369 F.Supp. 223, 230 (D.Conn.1974); *Perry v. Linke,* 394 F.Supp. 323 (N.D.Ohio 1974). The rationale employed by the *Bivens* Court supports this conclusion. The *Bivens* opinion noted that there was no "affirmative action by Congress" which affected the decision in that case. 403 U.S. at 396, 91 S.Ct. 1999. Additionally, in rejecting the Government's argument that money damages should only be allowed if found "essential" for enforcement of the Amendment, the Court stated:

". . . [W]e cannot accept the respondents' formulation of the question as whether the availability of money damages is necessary to enforce the Fourth Amendment. *For we have no explicit Congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress.* The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts.

403 U.S. at 397, 91 S.Ct. at 2005 (Emphasis supplied).

Finally, it should be stressed that Congress enacted § 1983 under a direct authorization found within the Amendment itself to enforce the Amendment through appropriate legislation. U.S.Const. Amend. XIV, § 5. The Fourth Amendment contains no such provision.

It is possible to contend that the language of *Bivens* necessitates an examination of the need for allowing monetary relief to enforce the provisions of the Amendment in situations where Congress has acted, but inadvertently or otherwise has failed to provide a remedy for a specific type of wrong alleged to have been incurred by the plaintiff. 403 U.S. at 397; *Clipper, supra* at 21. On the facts of this case, however, plaintiffs cannot establish any significant need for this court to allow them to press a claim for monetary damages under the Fourteenth Amendment. As discussed, *infra,* the County is subject to a claim for compensatory damages pursuant to 42 U.S.C. § 1981 and 28 U.S.C. § 1343(4). The rights of the plaintiffs to vindication of the privileges secured to them by the Federal Constitution would not be significantly enhanced by finding another base of action to be the Fourteenth Amendment. *See Local 660, International Association of Firefighters v. City of Charlotte,* 518 F.2d 83, 85, n. 3 (4th Cir. 1975), *rev'd on other grounds,* 423 U.S. 890, 96 S.Ct. 186, 46 L.Ed.2d 121 (1976); *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

For these reasons, the motion of Prince George's County to dismiss the claim for compensatory damages against it based upon the Fourteenth Amendment under 28 U.S.C. § 1331 will be granted.

### C.

■ A cause of action for damages has been stated against the County under 42 U.S.C. § 1981 over which this court has jurisdiction under 28 U.S.C. § 1343(4).[9] See

---

**9.** The Eleventh Amendment does not prohibit this claim. Its bar to suits against a state does not extend to counties and municipalities and

the agencies thereof. *Burt v. Board of Trustees of Edgefield City School District,* 521 F.2d (4th Cir. 1975).

dissenting opinion of Judge Winter in *Singleton v. Vance County Board of Education, supra*, 501 F.2d at 434.

In *Bennett v. Gravelle, supra*, 323 F.Supp. 203, Chief Judge Northrop of this court refused to impose liability in the nature of monetary damages upon a government entity stating that "an interpretation of section 1981 which authorizes damage actions against states and municipalities deprives section 1983 of its essential significance." However, this decision was prior to *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), in which the Supreme Court held that sections 1981 and 1983 are not necessarily to be construed as if they were cut from the same cloth. In *Carter*, the Court of Appeals, relying upon *Hurd v. Hodge*, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187 (1948), in which the Court held that the District of Columbia is a "State or Territory" as that phrase is used in section 1982, held that the District is a "State or Territory" within the meaning of section 1983. The Supreme Court reversed and explained the apparent inconsistency as follows:

"At first glance, it might seem logical simply to assume, as did the Court of Appeals, that identical words used in two related statutes were intended to have the same effect. Nevertheless, '[w]here the subject matter to which the words refer is not the same in the several places where they are used, or the conditions are different, or the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning well may vary to meet the purposes of the law . . . .' *Atlantic Cleaners & Dyers v. United States, supra* [286 U.S.] at 433 [52 S.Ct. at 609]. And the logic underlying the Court of Appeals' assumption breaks down completely where, as here, 'there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed . . . with different intent.' *Ibid.*

"Section 1982, which first entered our jurisprudence as § 1 of the Civil Rights Act of 1866, Act of Apr. 9, 1866, 14 Stat. 27, provides:

'All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.'

"This provision was enacted as a means to enforce the Thirteenth Amendment's proclamation that '[n]either slavery nor involuntary servitude . . . shall exist within the United States, or any place subject to their jurisdiction.' See *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437–438 [88 S.Ct. 2186, 2202, 20 L.Ed.2d 1189] (1968). 'As its text reveals, the Thirteenth Amendment "is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States."' *Civil Rights Cases*, 109 U.S. 3, 20 [3 S.Ct. 18, 27–28, 27 L.Ed. 835] (1883); see *Griffin v. Breckenridge*, 403 U.S. 88, 105 [91 S.Ct. 1790, 1800, 29 L.Ed.2d 338] (1971); *Jones v. Alfred H. Mayer Co., supra*, at 437–440 [88 S.Ct. at 2202–2203]; *Clyatt v. United States*, 197 U.S. 207, 216, 218 [25 S.Ct. 429, 430, 431, 49 L.Ed. 726] (1905). Thus, it cannot be doubted that the power vested in Congress to enforce this Amendment includes the power to enact laws of nationwide application.

"Moreover, like the Amendment upon which it is based, § 1982 is not a 'mere prohibition of State laws establishing or upholding' racial discrimination in the sale or rental of property but, rather, an 'absolute' bar to all such discrimination, private as well as public, federal as well as state. Cf. *Jones v. Alfred H. Mayer Co., supra* [392 U.S.] at 413, 437 [88 S.Ct. at 2189, 2202]. With this in mind, it would be anomalous indeed if Congress chose to carve out the District of Colum-

bia as the sole exception to an act of otherwise universal application. And this is all the more true where, as here, the legislative purposes underlying § 1982 support its applicability in the District. The dangers of private discrimination, for example, that provided a focal point of Congress' concern in enacting the legislation,[6] were, and are, as present in the

"[6] See *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 422–436 [88 S.Ct. 2186, 2194–2201, 20 L.Ed.2d 1189] (1968).

District of Columbia as in the States, and the same considerations that led Congress to extend the prohibitions of § 1982 to the Federal Government apply with equal force to the District which is a mere instrumentality of that Government. Thus, in the absence of some express indication of legislative intent to the contrary,[7] there was ample justification for

"[7] Although the legislative debate over the 1866 Act did not focus specifically on the District, there are numerous indications that the Act was designed to 'extend to all parts of the country.' Cong. Globe, 39th Cong., 1st Sess., 322 (Sen. Trumbull); see, *e. g., id.,* at 426, 474.

the holding in *Hurd* that § 1982 was intended to outlaw racial discrimination in the sale or rental of property in the District of Columbia as well as elsewhere in the United States.

"The situation is wholly different, however, with respect to § 1983. Unlike § 1982, which derives from the Civil Rights Act of 1866, § 1983 has its roots in § 1 of the Ku Klux Klan Act of 1871, Act of Apr. 20, 1871, § 1, 17 Stat. 13. This distinction has great significance, for unlike the 1866 Act, which was passed as a means to enforce the Thirteenth Amendment, the primary purpose of the 1871 Act was 'to enforce the Provisions of the Fourteenth Amendment.' 17 Stat. 13; see, *e. g., Lynch v. Household Finance Corp.,* 405 U.S. 538, 545 [92 S.Ct. 1113, 1118, 31 L.Ed.2d 424] (1972); *Monroe v. Pape,* 365 U.S. 167, 171 [81 S.Ct. 473, 475, 5 L.Ed.2d 492] (1961); see also Cong. Globe, 42 Cong., 1st Sess., App. 68, 80, 83–85. And it has long been recognized that '[d]ifferent problems of statutory meaning are presented by two enactments deriving from different constitu-

tional sources. See the *Civil Rights Cases,* 109 U.S. 3 [3 S.Ct. 18, 27 L.Ed. 835]. Compare *United States v. Williams* [341 U.S. 70, 71 S.Ct. 581, 95 L.Ed. 758], with *Screws v. United States,* 325 U.S. 91 [65 S.Ct. 1031, 89 L.Ed. 1495].' *Monroe v. Pape, supra,* at 205–206 [81 S.Ct. 473, at 494] (opinion of Frankfurter, J.).

"In contrast to the reach of the Thirteenth Amendment, the Fourteenth Amendment has only limited applicability; the commands of the Fourteenth Amendment are addressed only to the State or to those acting under color of its authority. See, *e. g., Civil Rights Cases, supra; United States v. Harris,* 106 U.S. 629 [1 S.Ct. 601, 27 L.Ed. 290] (1883); *United States v. Cruikshank,* 92 U.S. 542 [23 L.Ed. 588] (1876). The Fourteenth Amendment itself 'erects no shield against merely private conduct, however discriminatory or wrongful.'[8] *Shelley v.*

"[8] This is not to say, of course, that Congress may not proscribe purely private conduct under § 5 of the Fourteenth Amendment. See *United States v. Guest,* 383 U.S. 745, 762 [86 S.Ct. 1170, 1180, 16 L.Ed.2d 239] (1966) (Clark, J., concurring); *id.,* at 782–784 [86 S.Ct. at 1190–1192] (Brennan, J., concurring and dissenting). Cf. *Katzenbach v. Morgan,* 384 U.S. 641 [86 S.Ct. 1717, 16 L.Ed.2d 828] (1966).

*Kraemer,* 334 U.S. 1, 13 [68 S.Ct. 836, 842, 92 L.Ed. 116] (1948); see also *United States v. Price,* 383 U.S. 787 [86 S.Ct. 1152, 16 L.Ed.2d 267] (1966); *Evans v. Newton,* 382 U.S. 296 [86 S.Ct. 486, 15 L.Ed.2d 373] (1966); *Hodges v. United States,* 203 U.S. 1 [27 S.Ct. 6, 51 L.Ed. 65] (1906). Similarly, actions of the Federal Government and its officers are beyond the purview of the Amendment. And since the District of Columbia is not a 'State' within the meaning of the Fourteenth Amendment, see *Bolling v. Sharpe,* 347 U.S. 497, 499 [74 S.Ct. 693, 694, 98 L.Ed. 884] (1954); *Shelley v. Kraemer, supra* [334 U.S.] at 8 [68 S.Ct. at 839–840]; *Wight v. Davidson,* 181 U.S. 371, 384 [21 S.Ct. 616, 621, 45 L.Ed. 900] (1901), neither the District nor its officers are subject to its restrictions.[9]

"[9] Thus, unlike the situation with respect to § 1982 and the Thirteenth Amendment, inclu-

sion of the District of Columbia in § 1983 cannot be subsumed under Congress' power to enforce the Fourteenth Amendment but, rather, would necessitate a wholly separate exercise of Congress' power to legislate for the District under Art. I, § 8, cl. 17.

"Like the Amendment upon which it [is] based, § 1983 is of only limited scope. The statute deals only with those deprivations of rights that are accomplished under the color of the law of 'any State or Territory.' [10] It does not reach purely

[10] It should be observed that, unlike § 1982, which uses the phrase 'every State and Territory' as a mere geographical description, the expression 'any State or Territory' in § 1983 constitutes a substantive limitation upon the types of conduct that are prohibited.

private conduct and, with the exception of the Territories,[11] actions of the Federal

[11] As initially enacted, § 1 of the 1871 Act applied only to action under color of the law of any 'State.' 17 Stat. 13. The phrase 'or Territory' was added, without explanation, in the 1874 codification and revision of the United States Statutes at Large. Rev.Stat. § 1979 (1874). Since the Territories are not 'States' within the meaning of the Fourteenth Amendment, see *South Porto Rico Sugar Co. v. Buscaglia*, 154 F.2d 96, 101 (CA1 1946); *Anderson v. Scholes*, 83 F.Supp. 681, 687 (Alaska 1949), this addition presumably was an exercise of Congress' power to regulate the Territories under Art. IV, § 3, cl. 2."

Government and its officers are at least facially exempt from its proscriptions. Thus, unlike the situation presented in *Hurd*, the instant case does not involve a constitutional provision and related statute of universal applicability. This being so, the considerations that led to an expansive reading of § 1982 so as to include the District of Columbia simply do not apply with respect to § 1983."

409 U.S. at 421–425, 93 S.Ct. at 604–606.

The operative language of § 1981 is also derived from § 1 of the Civil Rights Act of 1866. *Tillman v. Wheaton-Haven Recreation Association*, 410 U.S. 431, 439, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973). Therefore, the Supreme Court's decision that a municipality is not a "person" for the purpose of § 1983 should not determine the applicability of § 1981 to a cause of action for damages against a municipality.

A cause of action for damages against a municipality under § 1981 seems appropri-ate in light of the broad applicability of the Thirteenth Amendment which § 1981 was enacted to enforce. For, as stated by the Court in *Carter, supra*, ". . ., like the Amendment upon which it is based, § 1982 is not a 'mere prohibition of State laws establishing or upholding' racial discrimination in the sale or rental of property but, rather, an 'absolute' bar to *all* such discrimination, private as well as public, federal as well as state." (Emphasis in original).

In *Baker v. F. & F. Investment Co.*, 489 F.2d 829 (7th Cir. 1973), the court used similar reasoning in holding that federal agencies are subject to a suit for damages under 42 U.S.C. §§ 1981 and 1982. The court reasoned as follows:

*"Governmental Liability for Violations of Civil Rights Acts*

"[1] Blinding itself to landmark decisions of the Supreme Court, the Government urges that neither it nor its instrumentalities are subject to suits for damages under 42 U.S.C. §§ 1981 and 1982 for violations of the Fifth and Thirteenth Amendments. We cannot turn back the clock to accept such a position.

"As far back as 1948 it was decided that federal action is covered by 42 U.S.C. § 1982. *Hurd v. Hodge*, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187. That case held that a Negro citizen denied the opportunity to purchase the home of his choice solely because of his race and color suffered the kind of injury that Section 1 of the 1866 Civil Rights Act (42 U.S.C. § 1982) was designed to prevent. It was held a violation of that Section for an arm of the federal government, a district court, to assist in the enforcement of restrictive covenants. *Hurd* emphasized that Section 1982 was 'directed * * * [at] governmental action.' 334 U.S. at 31, 68 S.Ct. 847.

"In *Jones v. Mayer Company*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, a suit for damages and other relief, the breadth of Section 1982 was reemphasized and applied to purely private discrimination. In a sweeping holding, the Court held that Section 1982 prohibits '*all* discrimi-

nation against Negroes in the sale or rental of property—discrimination by private owners as well as discrimination by public authorities.' 392 U.S. at 421, 88 S.Ct. at 2194. Eighteen months thereafter, in *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386, damages were expressly held to be recoverable under Section 1982. Then last Term in *District of Columbia v. Carter*, 409 U.S. 418, 422, 93 S.Ct. 602, 34 L.Ed.2d 613, the Court unanimously reiterated that like the Thirteenth Amendment upon which it was based, Section 1982 is an absolute bar to all racial discrimination in the sale or renting of property, 'private as well as public, federal as well as state.' Justice Brennan's opinion for the Court then stated:

> 'the same considerations that led Congress to extend the prohibitions of § 1982 to the Federal Government apply with equal force to the District [of Columbia], which is a mere instrumentality of that Government.' (Brackets in quoted text).

"In the face of such settled judicial construction of Section 1982, we must reject the Government's argument that it and its instrumentalities are subject only to equitable relief and are not liable for damages under Section 1982. The Section applies to the Government and it provides for damages. If the Government is not liable for damages, it is not because of any limitations inherent in Section 1982 but because of a general doctrine of sovereign immunity, a possibility to which we turn in the next part of the opinion.

"The same rule applies to Section 16 of the 1870 Civil Rights Act (42 U.S.C. § 1981), for, as explained in *Tillman v. Wheaton-Haven Recreation Association, Inc.*, 410 U.S. 431, 439–440, 93 S.Ct. 1090, 35 L.Ed.2d 403, it is based on the Thir-

teenth Amendment as well as the Fourteenth. Indeed, both present Sections 1981 and 1982 were originally part of Section 1 of the 1866 Act, but were broken into two Sections in the 1870 reenactment. See *Hurd v. Hodge*, 334 U.S. at 30–31, n. 7, 68 S.Ct. 847. Thus they are not to be construed differently. *Tillman*, *supra*, at 440, 93 S.Ct. 1090."

489 F.2d at 832–33.

■ Although *Baker* deals with a suit against federal agencies, the rationale of the decision is applicable to a municipality. *See also Maybanks v. Ingraham*, 378 F.Supp. 913, 916–918. Therefore, the court believes that a municipality is subject to a cause of action for damages under § 1981.[10]

■ The difficulty with reliance upon § 1981 for a cause of action against the County is that this section has seldom been used outside of suits involving contract discrimination.[11] The significant language of § 1981 for the purpose of this case is: "All *persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . .*" Notwithstanding a lack of judicial precedent, the court believes that one's rights under this section are violated by a racially motivated detention, interrogation, and investigation by police officers. A contrary holding would relegate the above language to meaningless phraseology. Therefore, the court holds that a cause of action for damages has been stated against the County under 42 U.S.C. § 1981 and that it has jurisdiction over this claim under 28 U.S.C. § 1343(4).[12]

### D.

■ Finally, with respect to a cause of action against the County, one additional

---

10. Of course, this section will also support equitable relief.

11. In fact, the vast majority of suits brought under § 1981 involve alleged racial discrimination with respect to employment contracts.

12. A cause of action against the County for equitable relief also has been stated under § 1981.

basis must be considered. The plaintiffs have alleged facts which constitute several causes of action under state law which are maintainable against the County because of its waiver of sovereign immunity with respect to them. These state claims may be heard in this suit under the doctrine of pendent jurisdiction.

In *Schoonfield v. Mayor and City Council of Baltimore*, 399 F.Supp. 1068 (D.Md.1975), Chief Judge Northrop explicated the principle of sovereign immunity in Maryland as follows:

"The principle of sovereign or governmental immunity is 'deeply ingrained in the law of Maryland.' *Robinson v. Board of County Commissioners for Prince George's County*, 262 Md. 342, 345, 278 A.2d 71, 73 (1971); *Duncan v. Koustenis*, 260 Md. 98, 104, 271 A.2d 547 (1970). Thus, in Maryland, in the absence of any express legislative waiver of immunity, there can be no recovery against a municipal corporation for any action arising out of the performance of its governmental functions. *Robinson v. Board of County Commissioners for Prince George's County, supra*, 262 Md. at 345, 278 A.2d 71; *E. Eyring & Sons Co. v. Mayor and City Council of Baltimore*, 253 Md. 380, 382, 252 A.2d 824 (1969); *Gold v. Mayor and City Council of Baltimore*, 137 Md. 335, 112 A. 588 (1921)."

399 F.Supp. at 1087.

In its charter approved on November 3, 1970, the County expressly waived immunity. *See Robinson v. Board of County Commissioners for Prince George's County*, 262 Md. 342, 345, 278 A.2d 71 (1970). Section 1013 of the charter provides:

"Governmental Liability. The County may be sued in actions sounding in tort in the same manner and to the same extent that any private person may be sued. The County shall carry liability insurance with adequate limits to compensate for injury to persons or damage to property resulting from negligence and other wrongdoings of its officers, agents, and employees. Nothing herein shall preclude the County from meeting the re-

quirements of this section by a funded self-insurance program."

Therefore, the state law claims are maintainable against the County and may be heard in this court if it is proper to exercise pendent jurisdiction over them. Since the court has determined that causes of action under federal law have been stated against the County, there is no reason to resolve this question any differently than it was resolved with respect to the individual defendants. *Cf. Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

### E.

The County next argues that this court cannot have jurisdiction under 28 U.S.C. § 1331 because "it does not appear to a legal certainty that the jurisdictional amount of $10,000 is present." The applicable law is found in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), as follows:

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (Footnotes omitted).

The plaintiffs pray compensatory and punitive damages in the amount of $250,000. It neither appears "to a legal certainty that the claim is really for less" than this amount nor is there reason for the court to conclude that this claim is made in bad faith.

### F.

Finally, the county argues that "the plaintiffs fail to state a claim upon which relief can be granted in that the amended complaint is conclusory and fails to allege sufficient specific facts." This argument was considered previously with respect to the motion filed by defendants Tucker and Hatfield. The court believes that the

amended complaint is sufficiently specific under the Rules.

Therefore, it is this 1st day of November, 1976, by the United States District Court for the District of Maryland, ORDERED that defendants' motions to dismiss the amended complaint be, and the same are hereby, DENIED except as to the claims against the County for damages under the Fourteenth Amendment and 28 U.S.C. § 1331.